SENECA, The (DAVIS v.). See Cases Nos. 3,650 and 3,651.

SENECA, The (UNITED STATES v.). See Case No. 16,251.

SERAT (SANDERSON v.). See Case No. 12,-300.

SERPENT, The (FRENCH v.). See Case No. 5,103a.

━━━

## Case No. 12,671.

### SERRELL v. COLLINS et al.

[4 Blatchf. 61.] [1]

Circuit Court, S. D. New York. June 30, 1857.

PATENTS—PROVISIONAL INJUNCTION—RIGHT NEVER ESTABLISHED—CONDITIONS.

1. Where, on an application for a provisional injunction, to restrain the infringement of letters patent, it appeared that the right of the plaintiff to the invention patented had never been established at law, that the plaintiff had twice failed to establish his right, on trials at law, that the defendant attacked the novelty of the invention, and claimed a right to use it on other grounds, and that the plaintiff's right had not been acquiesced in by the public, the court denied the application.

2. But the court made an order requiring the defendant to be ready to try, at the next term, an action at law pending against him on the patent, and providing that, if he should not be so ready, an injunction should then issue, as prayed for.

This was an application for a provisional injunction. The plaintiff [Alfred T. Serrell] claimed to be the first inventor of a new improvement in machinery for making mouldings, for which he obtained letters patent [No. 5,575], dated May 16, 1848. That patent was surrendered, and a reissued one obtained, dated January 7, 1851 [No. 187]. The last-mentioned patent was also surrendered, and a new reissued one was obtained, dated June 21, 1853 [No. 243]. The bill set forth, that the defendants [Denmark P. Collins and Abijah Pell] were violating the rights secured to the plaintiff by the patent, and prayed for an injunction. The novelty of the invention was attacked by the defendants, and they also claimed a right to use the invention described in the patent, on various other grounds.

George Gifford, for plaintiff.
Charles M. Keller, for defendants.

[NOTE. An action at law was accordingly tried, when the jury found for the plaintiff, with $2,000 damages. Case No. 12,672.]

━━━

## Case No. 12,672.

### SERRELL v. COLLINS et al.

[1 Fish. Pat. Cas. 289.] [1]

Circuit Court, S. D. New York. Oct., 1857.

PATENTS — PRESUMPTIONS — MACHINERY FOR MAKING MOLDINGS—DAMAGES—PROFITS.

1. The patent, when produced in evidence, whether it be an original or a reissue, is prima facie evidence that the thing granted was new and useful, and that the patentee was the inventor or discoverer thereof.

2. The grant of a patent is a determination on the part of the commissioner of patents that the subject of it is not embraced in a prior patent.

3. The jury are to consider that the patent grants that which the court determines it to grant.

4. Held, that Serrell's patent is not for yielding and fixed pressure, and feed rollers, in combination with rotary and fixed cutters; but it is for the combination described for operating on an angular strip for making moldings.

5. The rule of damages is the profits which had been derived by the defendants from the use of the plaintiff's machine, over any other mode which the defendants had a right to adopt.

This was an action on the case [by Alfred T. Serrell against Denmark P. Collins and Abijah Pell] tried by Judge Ingersoll and a jury, for the infringement of letters patent

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

[No. 5,575] for "improvement in machinery for making moldings," granted to the plaintiff May 16, 1848, reissued January 7, 1851 [No. 187], and again reissued June 21, 1853 [No. 243]. The suit was founded upon the last reissue, the claims of which were as follows: "What I claim as new, and desire to secure by letters patent, is: First, the combination of a ring or rings with a cutter or cutters, for operating on an angular strip for making a molding, whether the said cutter or cutters be rotating or stationary, or both, and whether the said cutter or cutters operate on the face or on the edge of the strip, or on both the face and the edge, substantially as herein described; and, second, the combination of the adjustable bed with the ring or rings and a cutter or cutters, as aforesaid, for operating on an angular strip for making a molding; whether the cutter or cutters be rotating or stationary, or both, whether the said cutter or cutters operate on the face or on the edge of the strip, or on both the face and the edge, substantially as described."

George Gifford, for plaintiff.

Peter Van Antwerp and Charles M. Keller, for defendants.

INGERSOLL, District Judge (charging jury). This suit is brought to recover damages which the plaintiff says he has sustained, by the use, by the defendants, of a certain mode of making moldings, which the plaintiff says is a violation of his rights, secured by a certain patent, first granted to him in the year 1848, and subsequently reissued in June, 1853. By the laws of the United States, a patentee who has obtained a patent for a new and useful invention or improvement, has a right to surrender the patent which has been granted to him, if it is defective in the specification or in the claim of the thing discovered, and, in lieu of the patent surrendered, obtain a reissued patent for the original discovery or improvement made, upon an amended specification and claim, and such reissued patent is to have full effect from the time it is issued up to the expiration of the term of fourteen years from the date of the original patent. The patent, when produced in evidence, whether it be an original or a reissued one, is prima facie evidence that the thing granted was new and useful, and that the patentee was the inventor or discoverer thereof.

To enable the jury properly to understand and dispose of the case before them, it is essential that they should turn their attention to three principal questions, which are necessarily involved in the case. If they do not consider these three several questions separately and distinctly, there is danger that in the confusion that may arise in considering the evidence as it has been presented, they may come to a wrong result. These three questions are the following: First. What is the grant of right which the patent purports to

make to the plaintiff? Second. Was the grant of right which the patent purports to make to the plaintiff a valid grant of right? Third. If it was a valid grant of right, have the defendants infringed upon the rights so granted by the patent to the plaintiff? In other words, have they, without the permission of the plaintiff, used that which the patent gives to the plaintiff the exclusive right to use? If these three questions should be determined in favor of the plaintiff, then another question will have to be considered and determined by the jury, and that question is this: What are the damages which the plaintiff has sustained by an infringement, on the part of the defendants, of the rights of the plaintiff, secured by his patent? If either the second or third question stated should be determined in favor of the defendants, then it will be unnecessary to give the last question stated any consideration; in such a case, the verdict of the jury must be for the defendants.

The first question, then, is: What was the grant which the patent purported to make to the plaintiff? This question is a question of law, and must be determined by the court; and the jury, therefore, will consider that the patent purports to grant that which the court shall determine it to grant. It appears from the patent itself what was granted to the plaintiff, provided the government had the right to grant what they undertook to give; and the government had a right to grant what, by the patent, they undertook to give; provided, at the time that the original application for a patent was made by the plaintiff, he was the inventor of the thing granted; and provided, also, that the invention was new and useful. If, at the time the original application for a patent was made, the plaintiff was not the inventor of the thing patented, if it were not new and useful, then the government had no right to grant what they undertook to grant.

The object of the plaintiff's machine, as appears by the specification of his patent, is to make moldings on an angular strip of wood; and one great advantage of it, as claimed, is the saving of material. The machine is particularly described in the specification. The cutter or cutters used are particularly described; the ring or rings, roller or rollers, are also particularly described. There may be one or more—no particular form or shape to the ring edge is required; no particular width is necessary. They must be so arranged and formed as to press upon that part of the wood most to be cut away by the cutting instruments; and, by the machine almost any kind of an angular strip can be operated upon so as to make most kinds of moldings.

As you have seen by the patent, the object was not only to make a molding from a bevel piece, but also to make a molding from an angular piece, hollowed out. What is purported to be granted is this: the combination of a ring or rings, with a cutter or cutters for operating on an angular strip for making moldings, whether that strip be bevel or angular;

whether the cutter or cutters be stationary or rotary, or both, and whether the cutter or cutters operate upon the face or edge of the strip, or upon both the face and edge, substantially as described in the specification of the patent; which particular description you will find set forth in the patent, and which, at your request, may be set before you. There were other grants in the patent, which it is not necessary to consider. This is what the patent purports to grant, and what it is material for you to consider in this case. The plaintiff does not claim generally, yielding and fixed pressure, and feed rollers in combination with rotary and fixed cutters; he says that such combination is old. He only claims his combination described for operating on an angular strip for making moldings, and that he says is new.

Having ascertained, gentlemen, what the patent purports to grant, it will then be necessary for you to turn your attention to the second question stated. Having ascertained what it was, the next question is whether the grant which the patent purported to make to the plaintiff was a valid grant. It was a valid grant if the thing patented was an invention made by the plaintiff prior to his application for the original patent, and if it were new and useful. The question whether the thing patented was an invention made by the plaintiff, whether it was new and useful, are questions of fact to be determined by the jury under the direction of the court; and in determining these questions of fact, the jury will bear in mind that, by the rules of law, the patent affords prima facie evidence that the plaintiff was the inventor of the thing patented, and that the invention was not only new but useful. Unless the jury find that the thing patented was, prior to the date of the patent of 1848, an invention of the plaintiff, new and useful, and then intended to be secured, the grant is not a valid grant; but if the jury find that the thing patented by the reissued patent of 1853, was, when the application for the patent of 1848 was made, the invention of the plaintiff, new and useful, and intended by him to be secured by that patent, then the grant contained in the reissued patent is a valid grant, and the reissued patent is prima facie evidence that the plaintiff was such inventor, and that he intended to have what is now granted by the reissued patent of June, 1853, secured by the patent of 1848, and this prima facie evidence must control the jury upon this subject. unless it is rebutted by countervailing evidence introduced in the case.

It is claimed by the defendants, that the specification of the patent issued to Woodworth in 1828, and the grant to him by that patent was substantially for the same thing which the plaintiff claims. If it was, then the grant to the plaintiff was not a valid grant. The commissioner of patents, when he granted the patent to the plaintiff, determined that that which was granted to the plaintiff had not been granted by the Woodworth patent.

He had that particularly called to his attention, for it seems that in the specification to the grant in this patent, now under consideration, the Woodworth patent is described and the distinction claimed by the patentee between his invention and the invention claimed by Woodworth is particularly pointed out, and having that under consideration, the commissioner determined that this grant which was made to the plaintiff had not been granted to Woodworth in the patent which was issued in his favor; in other words, that it was a new combination and a new invention, for which the plaintiff was entitled to a patent. He determined that the specification of the plaintiff was for something different from that which has been described in the Woodworth specification.

The court, gentlemen, concurs in the determination of the commissioner, that the thing granted to the plaintiff was not granted to Woodworth, or described by him in his specification. It is therefore necessary, provided the defendants are to claim successfully that this invention of the plaintiff, patented to him, was not his invention, or was not new and useful, to adduce some other evidence than that contained in the Woodworth patent, and therefore it is necessary for you to turn your attention to the question of fact, whether the defendants have introduced evidence to satisfy you that prior to the specification in the patent of 1848, there was any invention known and used like that claimed by the plaintiff; in other words, to satisfy you that the invention of the plaintiff was not new or useful. Was the thing granted, therefore, known and in use before the filing of the specification of the patent of 1848? The evidence which is most relied upon by the defendants to prove to you that that which was patented to the plaintiff was known and in use prior to the filing of the specification of the patent of 1848, is the evidence afforded by the witnesses who have testified in regard to the Seigler machine, which seems to have been in operation in 1843 or 1844, or at all events, at some time prior to the application by the plaintiff for the patent of 1848. If that machine, gentlemen, was a combination of a ring or rings, with a cutter or cutters, operating upon an angular strip, for making a molding substantially as described in the plaintiff's specification, then the thing purported to be granted to the plaintiff was not new, and the patent to the plaintiff was not a valid patent. Several witnesses have described what the Seigler machine was, and what was its construction. If I understand it, gentlemen, it was a machine intended to operate upon a bevel strip by means of certain instrumentalities. If I understand it, it was never used—and if I am wrong in this you will correct me, and I beg counsel to correct me if I should mistake any portion of the evidence—to operate upon a strip other than a bevel strip, and was never used to operate upon a strip similar to that described in the plaintiff's patent, and it was never contemplat-

ed, so far as I can judge from the evidence, to operate upon an angular strip; whereas, you see by the patent of the plaintiff, and by the drawings which accompany his patent, that the instrumentalities combined by him were intended to operate not only upon a bevel strip, but upon an angular strip; and, from those several strips, to make a molding of the desired shape.

Upon this description which has been given you by several witnesses in regard to the Seigler machine, Mr. Renwick, an eminent expert, is called upon to state, whether the invention or the machine used by Mr. Seigler, as described by the witnesses, taking their description exactly as true, and the machine to be as they have described it, is the same machine as that described by the plaintiff in his specification to the patent. He states that the Seigler machine, as described by the witnesses, is different in principle from the machine patented by the plaintiff, and he gives his reasons for that opinion. One reason which he gives is, as you will recollect, that the Seigler machine, however it might be constructed, could not operate except upon a bevel piece, whereas the plaintiff's machine is intended to operate, and can operate not only upon a bevel strip of wood, but upon a strip of wood sawed in an angular shape, and so form it as to make a complete molding. No expert is produced upon the part of the defendants to contradict Mr. Renwick in this particular. You will, therefore, gentlemen, examine the case with this view, whether this combination, this invention—if it were an invention—was new or useful, and if you are of the opinion that the Seigler machine was in principle like it, and that the plaintiff's machine was not upon a different principle, and to operate differently, and if you find it to be the same machine, you will necessarily decide that the plaintiff's was not new, and if it were not new, the patent could not be a valid patent.

There are other machines which have been introduced before you, but they have not been relied upon in argument so much by the defendants as the Seigler machine, and I will state, in regard to them generally, if any of them are upon this principle claimed by the plaintiff in his patent that is, to operate upon an angular strip of wood by the instrumentalities used by him to make moldings; in such an event as that, it must be decided that the plaintiff's machine was not new, and the verdict must be for defendants; but if none of these, prior to the time of the application for a patent by the plaintiff, were like the plaintiff's, and if the plaintiff's was a new invention at that time, then he is entitled to the benefits of it. It is his property, and is as well entitled to protection as any other property which an individual can hold.

If, gentlemen, these two questions should be decided in favor of the plaintiff, you will turn your attention to the third question, which is: have the defendants infringed upon the rights of the plaintiff, secured by his patent? If the machine or machines which they have used were a combination of the ring-roller, or a ring, with a cutter or cutters operating upon an angular strip, for making moldings substantially as described in the plaintiff's specification, then the defendants have violated the rights of the plaintiff secured by his patent. You have before you a model of the defendants' machine; you have seen how it operates, how the ring acts in combination with the cutters, how it presses upon that part of the angular piece most to be cut out; and you are to say, from this evidence, whether it does infringe upon the plaintiff's rights; in other words, whether this machine, operated by the defendants, is identical with the machine patented by the plaintiff.

If it is, and these two other questions are decided in favor of the plaintiff, then he is entitled to recover such damages as he has sustained by such infringement, and the only remaining question for you to determine is: what are the damages which he has sustained? I will not go particularly into the testimony which has been submitted to you upon that subject. I will lay down to you, gentlemen, what I conceive to be the rule. The rule of damages is the profits which have been derived to the defendants from making moldings by means of his machine, over any other mode which the defendants had a right to adopt, deducting from them, as is agreed, ten per cent. Now I know, gentlemen, it is difficult for you to determine this matter, but you must determine the question of damages the best way you can. As to what is the amount of profits derived to the defendants from making moldings by the operating of his machine, over and above the operating of any other machine in any other mode which the defendants had a right to use, is not perfectly certain.

I believe, gentlemen, it is conceded that in operating this machine by the defendants, there is no proof adduced which goes to show that they have operated upon a bevel strip. If there was a machine known as the Seigler machine of 1843, then the defendants would have the right to operate that machine upon a bevel piece, and it seems by the patent of Woodworth, that Woodworth had a right to operate his machine so as to make moldings upon a plane; and I do not know what advantage there would be in the plaintiff's machine over that of Woodworth's, except in the great saving of material. That is the great advantage of the plaintiff's machine. You will, however, come to this question of damages, and determine it the best you can: what are the profits over and above any other mode which the defendants had a right to adopt? and after deducting the ten per cent., render your ver-

dict in favor of the plaintiff for the amount which you so find.

The jury found for the plaintiff with $2,000 damages.

[NOTE. At a hearing on motion for a provisional injunction, an order was made, June 30, 1857, requiring the defendants to be ready to try this action at law at the then next term; otherwise, an injunction to issue as prayed for. Case No. 12,671.]